**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CRIMINAL ACTION NO. 3:08-CR-111-CRS-CHL**

**UNITED STATES OF AMERICA,**

                                        **Plaintiff,**

**v.**

**JOHN ROBERT BOONE,**                                    **Defendant.**

**REPORT AND RECOMMENDATION REGARDING
DEFENDANT JOHN ROBERT BOONE'S REQUEST FOR A *FRANKS* HEARING**

Before the Court is a motion for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) ("Motion for *Franks* Hearing") (DN 20) filed by defendant John Robert Boone ("Boone") on August 4, 2017 in this matter. The United States of America ("United States") filed a response (DN 21) on August 22, 2017. On September 6, 2017, Boone filed a reply (DN 25). Therefore, the Motion for *Franks* Hearing is ripe for review.

On October 3, 2017, Senior Judge Charles R. Simpson, III, referred the Motion for *Franks* Hearing to the undersigned for a report and recommendation. For the reasons set forth below, the undersigned recommends that the Motion for *Franks* Hearing be DENIED.

**I.    BACKGROUND**

On May 27, 2008, Kentucky State Police Detective Jim Smith ("Detective Smith") presented a search warrant affidavit to a Washington Circuit judge. (DN 20-2 [Ex. 1, Affidavit for Search Warrant].) A search warrant was issued by that judge for "Walker Lane, Springfield,

1

Kentucky 40069 Lat/Lon N37 43.865 W85 16.123." (DN 19-5 at 2 [Ex. 4, Search Warrant].)[1]

The search warrant affidavit included a description of the Walker Lane property as follows:

> From Washington County Courthouse at East Main Street and Cross Main one would travel west on KY 150 for .8 miles to KY 55 proceeding 3.2 miles where one would turn left onto Walker Lane. Travel 1.1 miles to the Subject residence, at the end of the roadway. There are 2 residences on the property. Once one passes a farm gate onto limestone driveway that forks, there is a gray lap sided two story frame home on the left, this home is not well kept however has two labrador dogs tied in the side yard. This residence has a split rail fence around the curtilage and a detatched [sic] plywood sided garage. On the right fork and on the same property is a Cedar Sided home with a wrap around porch and screen room.

(DN 20-2 at 2.) The search warrant affidavit described law enforcement officers' efforts to investigate illegal marijuana cultivation operations on a farm from the air and through an "open field investigation." (*Id*. at 3.) In the course of their investigation, law enforcement officers observed, among other things, "1 gallon plastic jugs in black plastic 4 gallon milk crates" as well as "black plastic 1 gallon growing containers with growing soil and marijuana seedlings." (*Id*.)

With respect to the two residences, the search warrant affidavit stated:

> Once officers approached the residences to continue their investigation, observations were made that led officers to believe that the residents were associated with the illegal marijuana. While in the driveway of the Gray sided frame house, officers observed 1 gallon plastic containers and 4 gallon plastic milk crates. Officers were not inside the garage and only observed inside the garage as they passed by to knock on the door (this garage has no door).

(*Id*.)

---

[1] The Court notes that the Search Warrant was not attached to the Motion for *Franks* Hearing, but is in the record at Document 19-5.

Detective Jim Smith also stated in the search warrant affidavit that he "observed in plain view while approaching the residences other containers like those utilized in these cultivations." (*Id.*)

As discussed in more detail below, it appears that Boone is requesting a *Franks* hearing based upon Detective Smith's failure to include additional information regarding law-enforcement officers' efforts to knock on the door of the gray house described in the search warrant affidavit (*i.e.*, the "knock and talk"), including whether the knock-and-talk occurred at all.

## II.  DISCUSSION

Boone initially argues that he is entitled to a *Franks* hearing because Detective Smith breached the curtilage of the gray house (which he asserts has an address of 841 Walker Lane) and illegally viewed the garage that contained the one-gallon plastic containers and 4 gallon plastic milk crates.[2] (DN 20 at 5.)  However, the thrust of his argument appears in his reply brief.  In his reply brief, Boone asserts that the affidavit is devoid of any information "(1) to indicate that the knock and talk [referred to in the search warrant affidavit] ever occurred; and (2), if a 'knock and talk' ever occurred, the Affidavit never mentions whether officers went to the front door of 841 Walker Lane [*i.e.*, the gray house] as consistently required by all courts . . . ." (DN 25 at 3.)  Boone argues that the affidavit contains no evidence that law enforcement personnel knocked promptly at the front door, waited to be received, and left, as required by law; Boone further argues that because no one was expected to be found at that address, the knock-

---

[2] Boone also appears to be making an argument that the garage and its driveway constitute part of the curtilage of the gray house.  The Court finds that any such argument should be considered in conjunction with the Motion to Suppress, not any motion for a *Franks* hearing, because it pertains to the scope of the search warrant, not any allegedly false statements or omissions.

3

and-talk was a subterfuge for an opportunity to conduct a search (presumably of the garage) and later obtain a search warrant. (*Id.* at 5-6.)

In *Franks v. Delaware*, 438 U.S. 154 (1978), the United States Supreme Court established the standard for when a district court is required to conduct an evidentiary hearing regarding the validity of an affidavit supporting a search warrant. "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id.* at 171. The United States Supreme Court further stated:

> There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons . . . [I]f these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required. On the other hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing.

*Id.* at 171–72; *see also United States v. Green*, 572 F. App'x 438, 441 (6th Cir. 2014) ("A defendant is entitled to a *Franks* hearing if he (1) 'makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit,' and (2) 'the allegedly false statement is necessary to the finding of probable cause.'") (quoting *United States v. Graham*, 275 F.3d 490, 505 (6th Cir. 2001)).

The Sixth Circuit has stressed the loftiness of the *Franks* standard:

4

> A defendant who challenges the veracity of statements made in an affidavit that formed the basis for a warrant has a heavy burden. His allegations must be more than conclusory. He must point to specific false statements that he claims were made intentionally or with reckless disregard for the truth. He must accompany his allegations with an offer of proof. Moreover, he also should provide supporting affidavits or explain their absence.

*United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990) (internal citations omitted).

As the United States points out, the Sixth Circuit "has repeatedly held that there is a higher bar for obtaining a *Franks* hearing on the basis of an allegedly material omission as opposed to an allegedly false affirmative statement." *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008); *see also United States v. Atkin*, 107 F.3d 1213, 1217 (6th Cir. 1997) ("Although material omissions are not immune from inquiry under *Franks,* we have recognized that an affidavit which omits potentially exculpatory information is less likely to present a question of impermissible official conduct than one which affirmatively includes false information."). This is "because of the 'potential for endless rounds of *Franks* hearings' due to potentially 'endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit.'" *Id*. at 415-16 (quoting, in part, *United States v. Martin,* 920 F.2d 393, 398 (6th Cir.1990)).

Whether Boone's argument is that he is entitled to a *Franks* hearing because the knock-and-talk did not occur (and therefore the search warrant affidavit contained a material false statement), or that the search warrant affidavit did not contain sufficient information regarding the circumstances surrounding same, it does not hold water. This is because Boone has not made a substantial preliminary showing of entitlement to a *Franks* hearing with respect to either argument.

5

A.     Whether knock-and-talk occurred

To the extent that Boone is alleging that the knock-and-talk did not occur, he has presented no offer of proof to back up his claim. As the United States notes, Boone has not offered a single affidavit or witness statement nor provided any support for their absence, a requirement expressly mandated by *Franks*. *See Franks*, 438 U.S. at 171 ("Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained."). Instead, Boone simply offers conclusory allegations and what appears to be an attempt to cross-examine the affiant.[3] For example, Boone appears to argue that no knock-and-talk occurred because law enforcement officers did not suspect that anyone was actually at the residence. These two occurrences are not necessarily mutually exclusive or inconsistent – that is, simply because law enforcement officers may *believe* that a residence is empty does not automatically preclude their ability to conduct a knock-and-talk. *See, e.g., Hardesty v. Hamburg Twp.*, 461 F.3d 646, 654 (6th Cir. 2006) ("Police officers are permitted to enter private property and approach the front door in order to ask questions or ask for consent to search the premises. But knocking at the front door will not always result in police officers being able to initiate the permitted conversation. The most obvious example is where nobody is at home."). More importantly, this argument does not equate to an offer of proof that the knock-and-talk did not occur. *Cf. United States v. Green*, 572 F. App'x 438, 442 (6th Cir. 2014) ("Nor did Green actually make a substantial preliminary showing of intentional or reckless falsity. His first

---

[3] While not a sworn affidavit, the document provided by Boone in his reply actually lends support to the fact that a knock-and-talk occurred. (*See* DN 25-2 [Ex. 1, DEA Report] [stating that law enforcement officers went to the "old farmhouse and red cedar siding house on the property to contact anyone that lived or occupied these residences. After knocking on both places no one answered."].)

6

allegation regarding the inconsistencies between the suspect's description in the search-warrant affidavit and Green's description in the presentence report does not establish that the affidavit was intentionally or recklessly falsified. A litany of reasons might justify these differences . . . ."). *Franks* made explicit that a conclusory statement is not enough to overcome a "presumption of validity with respect to the affidavit supporting the search warrant." *Franks*, 438 U.S. at 171. Therefore, Boone has not cleared the first hurdle toward a *Franks* hearing with respect to this issue. *See, e.g., United States v. Rose*, 714 F.3d 362, 370 (6th Cir. 2013) ("Without a showing of falsity concerning the statements in the affidavit, Rose cannot make a substantial showing that the affiant provided statements in the affidavit that he knew to be false.").

      **B.**      **Circumstances surrounding knock-and-talk**

To the extent that Boone argues that there were material omissions in the search warrant affidavit because Detective Smith did not include more detail about the circumstances surrounding the knock-and-talk, including whether the curtilage was breached, it also fails. A knock-and-talk has generally been recognized as a legitimate investigative technique. *See United States v. Thomas*, 430 F.3d 274, 277 (6th Cir. 2005) ("A number of courts, including [the Sixth Circuit], have recognized 'knock and talk' consensual encounters as a legitimate investigative technique at the home of a suspect or an individual with information about an investigation.") (listing cases). "This implicit license typically permits the visitor to approach the home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave." *Florida v. Jardines*, 569 U.S. 1, 8 (2013); *Kentucky v. King*, 563 U.S. 452, 469 (2011) ("When law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do.").

The fact that the search warrant affidavit did not contain specific information about whether the law enforcement officers knocked promptly at the front door, waited to be received, and then left does not necessarily evidence a *material* omission. Boone has provided no authority for the proposition that a search warrant affidavit *must* contain these additional facts. Moreover, the undersigned notes that the search warrant affidavit is not totally devoid of any facts surrounding the knock-and-talk. The search warrant affidavit *does* indicate that law enforcement officers were in the driveway of the gray house when they observed the one gallon plastic containers and four gallon plastic milk crates in the open garage "as they passed by to knock on the door." ((DN 20-2 at 3.) Any allegation by Boone that more specific information should have been included is, at this point and without more information, mere conjecture and does not meet the higher standard described in *Fowler*.

Nor can Boone meet make a preliminary showing that law enforcement officers impermissibly breached the curtilage of the gray house to effect the knock-and-talk. Boone, pointing to an aerial photograph that is unaccompanied by any affidavit, avers that the garage was 100 to 150 feet behind the gray house (*i.e.*, 841 Walker Lane).[4] (DN 20 at 5-6.) He therefore argues – again without any offer of proof – that law enforcement officers breached the curtilage when, in the course of standing in the driveway, they observed the one-gallon plastic containers and four-gallon plastic milk crates in the garage. Boone's argument falls flat.

For one, the alleged unlawful breach is based on pure speculation, unaccompanied by any offer of proof. Moreover, even if the aerial photograph showed the location of the garage in relation to the gray house, this says nothing, beyond what is contained in the search warrant

---

[4] The Court notes that the photograph provided by Boone does not indicate the location of the garage.

8

affidavit, about what actually occurred on May 27, 2008 or if any alleged breach was permissible to effectuate a knock-and-talk. *Cf. Pritchard v. Hamilton Twp. Bd. of Trustees*, 424 F. App'x 492, 499 (6th Cir. 2011) ("A knock and talk—where a police officer knocks on the front door of a home for purposes of speaking to the occupants or asking for consent to search the premises—is a legitimate investigative technique that does not necessarily run afoul of the Fourth Amendment, *even if it requires the police officer to enter the curtilage of the home*.") (emphasis added). Indeed, the Sixth Circuit has held that "where knocking at the front door is unsuccessful in spite of indications that someone is in or around the house, an officer may take reasonable steps to speak with the person being sought out even where such steps require an intrusion into the curtilage." *Hardesty*, 461 F.3d at 645; *see also Turk v. Comerford*, 488 F. App'x 933, 947 (6th Cir. 2012) ("A law-enforcement officer may enter a home's curtilage without a warrant if he has a legitimate law-enforcement objective, and the intrusion is limited."). Consequently, Boone has not made a preliminary showing of entitlement to a *Franks* hearing with respect to this issue either.

### C. Remaining arguments

Finally, although it is not clear whether made in support of his request for a *Franks* hearing, in his initial brief Boone makes these additional arguments: (1) the place to be searched was not specified properly because the search warrant listed "Walker Lane" and not the two residences on the property as "841 Walker Lane" and "900 Walker Lane"; (2) that the place to be searched listed "any and all vehicles" when only one vehicle – a blue 1996 Chevrolet truck – was on the subject property and that the affidavit fails to described any information containing same;

9

and (3) probable cause only existed to search the gray house (*i.e.*, 841 Walker Lane), not the red-sided house (*i.e.*, 900 Walker Lane). (DN 20 at 4-5.)

A search warrant must (1) be supported by probable cause; and (2) particularly describe the place to be searched, and the persons or things to be seized. U.S. Const. amend. IV. ("[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."). The Court's review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit. *Aguilar v. Texas,* 378 U.S. 108, 109 n.1 (1964), *abrogated on other grounds by Illinois v. Gates,* 462 U.S. 213 (1983); *United States v. Hodge*, 714 F.3d 380, 384 (6th Cir. 2013) (noting that the existence of probable cause must be based on "all the circumstances set forth in the affidavit" provided by the officers seeking a warrant") (internal quotation marks omitted). Notably, the Fourth Amendment requires that a search warrant not only demonstrate probable cause, but also describe with particularity the place to be searched.

It appears that these arguments were intended to be made in support of a motion to suppress based on insufficiency of the search warrant – an issue not presently before the undersigned. However, to the extent that Boone intended for these arguments to support his request for a *Franks* hearing, the undersigned determines that these bare assertions do not constitute the substantial preliminary showing required by the law.

### III.   RECOMMENDATION

For the reasons stated, the undersigned RECOMMENDS that the Motion for *Franks* Hearing (DN 20) be DENIED.

cc:  Counsel of record

### Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations.  A copy shall forthwith be electronically transmitted or mailed to all parties.  28 U.S.C. § 636(b)(1)(C).  Within fourteen (14) days after being served, any party may serve and file specific written objections to these findings and recommendations.  *Id.*; Fed. R. Civ. P. 72(b)(2).  Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal.  *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985).  A party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.  Fed. R. Civ. P. 72(b)(2).